UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
MILENKO MIJATOVIC,

                Plaintiff,

**MEMORANDUM & ORDER**

    -against-

05 CV 1468 (RJD) (LB)

FRANK BRUNCKHORST CO., LLC
and UNITED FOOD AND COMMERCIAL
WORKERS UNION, LOCAL 342, AFL-CIO,

                Defendants.
-----------------------------------------------------------X
DEARIE, Chief Judge.

Plaintiff, a member of defendant United Food and Commercial Workers Union, Local 342 ("UFCW"), and formerly an employee of Frank Brunckhorst Company, LLC ("Brunckhorst"), claims (1) that Brunckhorst terminated his employment in violation of a collective bargaining agreement ("CBA") between itself and UFCW; and (2) that UFCW breached its duty to provide him with fair representation. Both defendants move for summary judgment. For the reasons explained below, defendants' motions are granted.

## BACKGROUND[1]

Plaintiff began working for Brunckhorst, a manufacturer and distributor of meat and cheese products, on August 17, 1981. Brunckhorst Rule 56.1 Stat't ¶¶ 1, 9. He continued at Brunckhorst for twenty-three years, rising from his initial position as a "Helper" to that of

---

[1]Unless otherwise indicated, the facts described here are undisputed.

Assistant Supervisor in the Sanitation Department.[2] Id. ¶¶ 9, 16, 21. Plaintiff was a UFCW member throughout his tenure at Brunckhorst. Id. ¶ 10. On September 16, 2004, based on its conclusion that plaintiff had stolen food items from the workplace, and pursuant to its "zero tolerance" policy regarding theft by employees, Brunckhorst terminated plaintiff's employment. Id. ¶¶ 4-6, 21.

When plaintiff arrived at work on September 16, 2004, he was instructed to report to Mark Seiter, the plant manager. Mijatovic Aff. ¶¶ 4-6. During a meeting in Seiter's office,[3] Seiter told plaintiff that he had received a telephone call the previous evening from Donald Sarlo, the night manager, whose duties include inspecting the bags of employees as they leave the workplace. Id. ¶ 4; Brunckhorst Rule 56.1 Stat't ¶ 8. During the call, Sarlo reported that he had seen plaintiff leaving work with Brunckhorst products, including kielbasa, under his jacket.[4] Mijatovic Aff. ¶ 4. Plaintiff told Seiter that he had been carrying a plastic bag containing one pound of cheese, nothing more, and that he had purchased the cheese earlier in the day, paying

---

[2] Prior to the incident at issue here, plaintiff claims, he had been disciplined only once during his employment at Brunckhorst: He was suspended for two weeks in 1986 based on allegations that he and another employee had shoved one another. Mijatovic Aff. ¶ 3. Brunckhorst describes this incident as having occurred in 1987. Brunckhorst Rule 56.1 Stat't ¶ 11.

[3] According to Seiter, Lee Dixon, the UFCW shop steward, was present for this meeting. Seiter Dep. 77. Plaintiff denies that Dixon was present. Mijatovic Dep. 88. Without indicating clearly whether he was present, Dixon claims to have spoken with plaintiff within minutes of the meeting. Dixon Dep. 15-16.

[4] According to Seiter, he told also plaintiff that Sarlo claimed to have stopped plaintiff as he left the workplace and asked him for a receipt. Seiter, Dixon, and Iacono claim further that plaintiff acknowledged having been stopped by Sarlo. Seiter Dep. 79-80; Dixon Dep. 16; Iacono Aff. ¶ 9. Plaintiff disputes these claims, arguing that Seiter did not initially mention Sarlo's claim to have stopped him, and that Sarlo never in fact stopped him. Mijatovic Aff. ¶¶ 4, 12, 14.

2

"day shift Checker" Joseph Mallano approximately three dollars. Id. ¶ 5. Seiter asked plaintiff to produce a receipt, and plaintiff responded that he did not have it.[5] Id. Seiter then summoned Mallano, who denied having sold any products to plaintiff the previous day. Id. ¶ 6. Finally, Seiter instructed plaintiff to return home, and advised him that if no receipt was discovered to document his purchases, he would be fired. Id.

Later that day, Seiter telephoned plaintiff at home to inform him that no receipt had been found and that his employment was terminated. Mijatovic Dep. 95. Plaintiff telephoned Peter Iacono, his UFCW representative, and told him that he had been fired based on a false accusation of theft. Mijatovic Aff. ¶ 10. Lee Dixon, the UFCW shop steward, telephoned Iacono as well. Iacono Aff. ¶ 6; Dixon Dep. 17. Iacono also received a letter, dated September 17, 2004 and signed by Seiter and another Brunckhorst employee, stating that Brunckhorst had concluded that plaintiff had stolen Brunckhorst products, and had fired him, based on two facts: "there was no receipt and no one could vouch that the product was purchased." Iacono Aff. Ex. 4.

On September 17, 2004, Iacono went to plaintiff's workplace, where he interviewed Sarlo, Mallano, and Dixon. Id. ¶ 11. Sarlo told Iacono that he had observed plaintiff leaving work with Brunckhorst products on September 15. Id. ¶ 13. In a written statement, Sarlo indicated, as well, that he had stopped plaintiff and asked to see a receipt. Id. Ex. 6. According to Sarlo, plaintiff responded that he had purchased the products from Mallano, but had lost the receipt. Id. Sarlo also explained that Seiter had warned him earlier the same day that plaintiff was suspected of stealing. Id. Mallano, meanwhile, reported that plaintiff had not purchased

---

[5]Plaintiff later explained to his UFCW representative that he must have thrown the receipt away. Id. ¶ 16.

3

anything from him on September 15, and provided a written statement to that effect. Id. ¶ 12; Ex. 5. Dixon indicated that he understood the events of September 15 to have been as Sarlo and Mallano had described them. Id. ¶ 14.

On September 22, 2004, Iacono returned to plaintiff's workplace and conducted a grievance meeting, at which plaintiff, Seiter, and Dixon were present. Mijatovic Aff. ¶¶ 11-12. Seiter described the allegations against plaintiff: that on September 15, 2004, Sarlo had observed plaintiff leaving the workplace with a plastic bag containing Brunckhorst products, including kielbasa, which he held under his jacket; that Sarlo had stopped plaintiff and asked him to produce a receipt; that plaintiff had not done so. Id. ¶ 11. Plaintiff responded by denying that the bag had contained kielbasa; he likewise denied that Sarlo had stopped him. Id. ¶¶ 11-12, 14. If Sarlo had stopped him, plaintiff claimed, he would have produced the receipt. Id. ¶ 14.

Iacono asked Seiter why, if Sarlo had caught plaintiff in the act of stealing, he had not prevented plaintiff from leaving. Id. ¶ 13. Seiter responded that Sarlo had permitted plaintiff to leave based on plaintiff's claim that he had paid Mallano for the products earlier that day. Id. Seiter called Mallano into the meeting, and Mallano stated, as before, that he had not made a sale to plaintiff on September 15. Mijatovic Dep. 104. Iacono asked Seiter whether, in view of plaintiff's long tenure at Brunckhorst, a penalty short of dismissal was available; Seiter answered no.[6] Mijatovic Aff. ¶ 15.

Seiter and Iacono also reviewed the receipts for September 15, looking for a receipt

---

[6] Scott Habermehl, Brunckhorst's Director of Human Resources, avers that "Frank Brunckhorst Co. has a zero tolerance policy for theft, and has always terminated employees who have been caught stealing." Habermehl Aff. ¶ 10. See also Brunckhorst Rule 56.1 Stat't Ex. J (Brunckhorst disciplinary policy identifying theft as a "Class I Offense" constituting cause for "disciplinary action up to, and including discharge.").

4

matching the amount plaintiff claimed to have spent: three dollars and change.[7] Iacono Aff. ¶ 18. The record contains conflicting testimony as to whether they discovered such a receipt. Seiter and Iacono testified at their depositions that there was no receipt matching plaintiff's claimed purchase, but Dixon testified that there were three such receipts. Iacono Dep. 35-36; Seiter Dep. 82-83; Dixon Dep. 26-27. For the purposes of these summary judgment motions, drawing all inferences in plaintiff's favor, the Court assumes that the search did indeed produce three receipts in the three-dollar range, as plaintiff claims.

When the meeting concluded, Iacono told plaintiff that there was little chance that his challenge to Brunckhorst's decision to terminate him would succeed. Mijatovic Aff. ¶ 16; Iacono Aff. ¶ 19. Iacono subsequently decided not to take plaintiff's case to arbitration.[8] Iacono claims that he telephoned plaintiff a few days later to inform him of this decision. Id. ¶ 20. Plaintiff disputes this, alleging that although he attempted to contact Iacono several times after the grievance meeting, he never heard from Iacono again. Mijatovic Aff. ¶ 18; Pl.'s Rule 56.1 Stat't ¶ 15. Plaintiff later learned that another UFCW representative, Gregg Cespedes, had taken over for Iacono. Mijatovic Aff. ¶ 18. Plaintiff claims that although his wife "continued to contact" Cespedes, Cespedes did not help him to prosecute his case, instead informing him that it was "too late to do anything for [him]." Id. ¶¶ 19-20.

Following the grievance meeting, plaintiff pursued various forms of relief on his own.

---

[7]Iacono suggests that plaintiff was present for this review of the receipts, Iacono Dep. 35, but plaintiff insists he was not, Mijatovic Aff. ¶ 14, and Seiter's deposition testimony supports plaintiff's account, Seiter Dep. 92.

[8]According to Iacono, under then-existing UFCW policy, the decision was his to make, and no appeal was available. Iacono Dep. 9. Plaintiff does not dispute these assertions.

When the New York State Department of Labor determined that he was not entitled to unemployment benefits because he had been fired for misconduct, plaintiff appealed, and an administrative law judge of the state's Unemployment Insurance Appeal Board conducted a hearing that included testimony from witnesses for Brunckhorst, but none for UFCW. Id. Ex. A. Following the hearing, in a decision dated January 28, 2005, the ALJ described Brunckhorst's witnesses as "inconsistent and incredible," concluded that plaintiff had not committed theft, and declared him eligible for benefits. Id.

On February 23, 2005, plaintiff filed a charge against UFCW with the National Labor Relations Board ("NLRB"), alleging that the union had failed to represent him in accordance with its duty. Iacono Aff. Ex. 7. In a letter dated April 11, 2005, the NLRB notified plaintiff that it had concluded that "further proceedings [we]re not warranted" and dismissed his charge. Id. Ex. 8. Plaintiff did not appeal this decision. Mijatovic Dep. 129.

Finally, plaintiff initiated the instant federal lawsuit against Brunckhorst and UFCW. In his amended complaint, plaintiff alleges that Brunckhorst wrongfully discharged him on the basis of a false accusation. Am. Compl. ¶ 10. He alleges further that UFCW arbitrarily and capriciously failed to investigate his grievance; that it failed to follow its customary procedures in handling his case; and that its decision not to take his case to arbitration was "without good cause or reason." Id. ¶ 13.

## DISCUSSION

A.  **Summary Judgment Standard**

Summary judgment is appropriate only "if the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits . . . show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "Only when no reasonable trier of fact could find in favor of the nonmoving party should summary judgment be granted." Taggart v. Time, Inc., 924 F.2d 43, 46 (2d Cir. 1991). Moreover, "[t]he inferences to be drawn from the underlying affidavits, exhibits, interrogatory answers, and depositions must be viewed in the light most favorable to the party opposing the motion." Cronin v. Aetna Life Ins. Co., 46 F.3d 196, 202 (2d Cir. 1995). However, the nonmoving party "may not rely simply on conclusory statements or on contentions that the affidavits supporting the motion are not credible, or upon the mere allegations or denials of the adverse party's pleading," Goenaga v. March of Dimes Birth Defects Found., 51 F.3d 14, 18 (2d Cir. 1995) (internal quotation marks and citation omitted). Rather, the party opposing summary judgment must "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).

## B. The Duty of Fair Representation

Where, as here, an employee alleges both that his employer breached a collective bargaining agreement in violation of Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185, and that his union breached the duty of fair representation implied under the National Labor Relations Act, he proceeds under a hybrid cause of action whose two elements are "inextricably interdependent." DelCostello v. Int'l Bhd. of Teamsters, 462 U.S. 151, 164 (1983). Thus, if he fails in the first instance to demonstrate that the union breached its duty, he may not proceed against his employer. Id. ("To prevail against either the company or the Union,

... [employee-plaintiffs] must not only show that their discharge was contrary to the contract but must also carry the burden of demonstrating breach of duty by the Union.") (citation omitted); Young v. U.S. Postal Serv., 907 F.2d 305, 307 (2d Cir. 1990) ("[T]he Union's breach is a prerequisite to consideration of the merits of plaintiff's claim against her former employer for improper discharge."). Because, for the reasons explained below, the Court finds that plaintiff cannot prevail against UFCW, it need not consider his claim against Brunckhorst.

A union acting as the exclusive representative of employees comprising a bargaining unit has a statutory duty to represent those employees fairly. Marquez v. Screen Actors Guild, Inc., 525 U.S. 33, 44 (1998). Grounded in the National Labor Relations Act, see 29 U.S.C. §§ 158(b), 159(a), the duty of fair representation serves as "a bulwark to prevent arbitrary union conduct against individuals stripped of traditional forms of redress by the provisions of federal labor law," Vaca v. Sipes, 386 U.S. 171, 182 (1967). This duty extends both to a union's negotiation of a collective bargaining agreement and to its efforts to enforce and administer that agreement. Spellacy v. Airline Pilots Ass'n-Int'l, 156 F.3d 120, 126 (2d Cir. 1998). A union breaches the duty of fair representation in three circumstances: "when its conduct toward a member of the bargaining unit is [(1)] arbitrary, [(2)] discriminatory, or [(3)] in bad faith." Marquez, 525 U.S. at 44.

In judging whether a union has breached its duty, a court "must be highly deferential." Spellacy, 156 F.3d at 126 (citation omitted). Union conduct may be characterized as arbitrary only "when it is irrational, when it is without a rational basis or explanation," Marquez, 525 U.S. at 46, and may *not* be so characterized as long as it is within a "wide range of reasonableness," id. Mere negligence on the union's part does not constitute a breach of the duty of fair

representation. Barr v. United Parcel Serv., Inc., 868 F.2d 36, 43 (2d Cir. 1989). Nor do tactical errors, unless they are "so egregious, so far short of minimum standards of fairness to the employee and so unrelated to legitimate union interests as to be arbitrary." Id. (quoting NLRB v. Local 282, Int'l Bhd. of Teamsters, 740 F.2d 141, 147 (2d Cir. 1984)).

## C. Application

Plaintiff claims that UFCW breached its duty of fair representation in the first of the three ways articulated in Marquez: that is, through arbitrary conduct.[9] More specifically, he offers three general allegations: (1) that the union failed to investigate his grievance, (2) that it failed to follow customary procedures in handling his case, and (3) that it acted unreasonably in deciding not to take his case to arbitration. Am. Compl. ¶ 13. For the reasons explained below, the Court does not conclude that UFCW breached its duty on any of these grounds.

The first of plaintiff's general allegations—that the union failed to investigate his grievance—is without merit. While courts have held that a union breaches the duty of fair representation where its investigation of an employee's grievance "is so grossly inadequate as to transcend negligence and poor judgment," see Lapir v. Maimonides Med. Ctr., 750 F. Supp. 1171, 1177 (E.D.N.Y. 1990), the record demonstrates that Iacono made adequate efforts to investigate plaintiff's case. Iacono interviewed plaintiff on September 16, 2004, the day plaintiff was fired. Iacono Aff. ¶ 7. The following day, September 17, he went to plaintiff's workplace and interviewed Sarlo, Mallano, and Dixon, as well as taking written statements from Sarlo and

---

[9]Although the complaint also charges UFCW with bad faith and discrimination, these claims are conclusory and unsubstantiated by any evidence. Moreover, plaintiff's counsel conceded at oral argument that he seeks relief on the sole ground of arbitrariness.

9

Mallano. Id. ¶¶ 11-13. Finally, on September 22, Iacono conducted a grievance meeting at plaintiff's workplace, where he questioned Seiter, heard Mallano's account for a second time, and examined Brunckhorst's receipts from September 15. Id. ¶¶ 16-18. In short, within a few days of plaintiff's termination, Iacono interviewed every individual likely to have possessed relevant knowledge and examined the available physical evidence. The record contains no evidence that Iacono undertook these measures in an incompetent manner. The Court is not aware of additional investigative avenues Iacono might have pursued. Nor has plaintiff identified such avenues, other than by maintaining that Iacono "should have insisted that Brunckhorst prove that Mijatovic had been caught leaving without a receipt." Pl.'s Mem. Opp. Mot. Summ. J. [hereinafter Pl.'s Mem.] 7. This general suggestion is insufficient to support plaintiff's claim that the union's investigation was incomplete. See Spielmann v. Anchor Motor Freight, Inc., 551 F. Supp. 817, 823 (S.D.N.Y. 1982) ("[T]he conclusory allegation that the Union failed to call unnamed witnesses it knew could have corroborated the plaintiff's allegation[s] is simply too general, without more, to sustain an unfair representation claim.") (internal quotation marks and citation omitted, second alteration in original). The Court therefore declines to conclude that Iacono's investigation constituted a breach of UFCW's duty to represent plaintiff.

The complaint next alleges that UFCW failed to follow its customary procedure in handling plaintiff's case. Again, however, plaintiff presents no facts to support this claim.[10]

---

[10]Plaintiff does complain that the union did not return his telephone calls for an extended period of time after the grievance meeting. However, such conduct, if it occurred, while lamentable, would not constitute a breach of the union's duty to represent plaintiff. When Iacono decided not to take plaintiff's case to arbitration, plaintiff had no right of appeal from that decision, see Iacono Dep. 9. Nor was plaintiff entitled under the CBA to pursue arbitration on his own, see Iacono Aff. Ex. 3 at 22 (CBA Article 26). Thus, even if plaintiff had been informed of Iacono's decision in a timely fashion (and Iacono claims he was so informed, see id. ¶ 20), the

Meanwhile, the record suggests that Dixon did intervene in the matter initially, as required by Article 26(1)(a) of the CBA, by speaking with plaintiff and with Seiter; and that Iacono did convene a grievance meeting, as required by Article 26(1)(b) of the CBA. See Dixon Dep. 11-17; Mijatovic Aff. ¶¶ 11-15; Iacono Aff. Ex. 3 at 21 (CBA Article 26); Iacono Dep. 54-56 (describing two-step procedure required by CBA). The record also contains evidence suggesting that the union's approach in this case did not differ from its approach in other cases in which members of the bargaining unit were discharged. See Seiter Dep. 103, 111 (testimony of Seiter that during his seven years at Brunckhorst, he had caught five employees stealing, not including plaintiff, all of whom were terminated; that some of those five individuals were union members; that UFCW had taken none of the five cases to arbitration; and that UFCW had followed the same procedures in handling plaintiff's case that it had followed in other cases involving discharged employees). Thus, the Court declines to find that UFCW breached its duty by failing to observe ordinary procedure in handling plaintiff's case.

Finally, the complaint alleges that UFCW acted unreasonably by refusing to take plaintiff's case to arbitration. The Court notes that the question is whether the decision not to take plaintiff's case was arbitrary—*not* whether plaintiff would have prevailed at arbitration. It is well settled that an employee has no absolute right to have his grievance arbitrated. Vaca, 386 U.S. at 191. Further, the union must have "room to make discretionary decisions and choices, even if those judgments are ultimately wrong." Marquez, 525 U.S. at 45-46. Indeed, "a breach of the duty of fair representation is not established merely by proof that the underlying grievance was meritorious . . . ." Vaca, 386 U.S. at 195. The Court's task, therefore, is to examine the

---

knowledge would not have helped him, because there was nothing he could have done to alter it.

evidence before the union representative who decided that arbitration was not warranted, and to determine whether the decision not to proceed to arbitration, in the face of that evidence, was outside a "wide range of reasonableness." Marquez, 525 U.S. at 45. For the reasons explained below, the Court finds that it was not.

To support the claim that UFCW acted arbitrarily by deciding not to take his case to arbitration, plaintiff relies on two arguments. First, plaintiff points to Sarlo's claim that he caught plaintiff in the act of stealing products, but neither detained plaintiff nor confiscated the products. This account is implausible, plaintiff claims, and Iacono acted unreasonably when he "gave credence" to it, especially in light of Sarlo's testimony that Seiter had warned him earlier that day that plaintiff was suspected of theft. Pl.'s Mem. 7-8. The Court does not share plaintiff's view that Iacono acted irrationally by giving credence to Sarlo's account. Sarlo offered a plausible rationale for his decision to permit plaintiff to leave, citing plaintiff's claim that he had purchased the products from Mallano earlier in the day. Iacono Aff. Ex. 6. Sarlo noted, as well, that he took the additional precaution of telephoning Seiter at home to alert him about what had occurred.[11] Id.

Second, plaintiff contends that Brunckhorst's position contained "many inconsistencies" that should have caused Iacono to doubt the accounts its witnesses offered. Pl.'s Mem. 6. The alleged inconsistencies include: (1) in his initial conversation with plaintiff on September 16, 2004, Seiter said Sarlo had observed plaintiff leaving with products in a plastic bag "under his coat," but in the grievance meeting on September 22, Seiter described plaintiff as carrying

---

[11] The Court notes that Iacono's decision not to pursue arbitration does not necessarily indicate that he *believed* Sarlo—only that he found Sarlo's account sufficiently credible to preclude plaintiff from prevailing at arbitration.

12

products in a plastic bag, Mijatovic Aff. ¶ 11, Pl.'s Rule 56.1 Stat't ¶ 7; (2) Seiter did not mention during the initial meeting that Sarlo claimed to have stopped plaintiff and asked for a receipt,[12] id.; (3) both Seiter and Sarlo initially described plaintiff as carrying either kielbasa or simply "product," but at the grievance meeting Seiter mentioned cheese, as well, id. ¶¶ 1-2, 6-7; and (4) Mallano's written statement indicated he did not sell any products to plaintiff on September 15, 2004, but there is evidence that a search of the receipts for that date produced three receipts in the three-dollar range, Pl.'s Mem. 7, Dixon Dep. 26-27.[13] However, the items on this list, whether considered separately or together, are insufficient to require the conclusion that Iacono acted arbitrarily by declining to take plaintiff's case to arbitration, since none of these items necessarily exhibits inconsistency. That plaintiff's plastic bag was under his coat does not mean that he was not carrying the bag; that Seiter did not initially mention Sarlo's claim to have stopped plaintiff does not mean that Sarlo never stopped him; that plaintiff was carrying kielbasa does not mean that he was not also carrying cheese; and the existence of three receipts in the three-dollar range does not prove that Mallano made a sale to plaintiff on September 15, 2004.

The record demonstrates that Iacono was presented with conflicting evidence: on one

---

[12]As noted above, Seiter claims that he *did* inform plaintiff of this claim during their initial conversation. Seiter Dep. 79-80.

[13]Plaintiff also notes inconsistencies in defendants' evidence with regard to other issues: whether plaintiff's bag contained pork butts, as well as cheese and kielbasa; whether Sarlo and Mallano typically staple the bag shut when an employee makes a purchase; whether Mallano made a sale to plaintiff on any day *other* than September 15, 2004. Pl.'s Rule 56.1 Stat't ¶¶ 9-10, 13-14. But there is no indication that these inconsistencies were apparent when Iacono decided not to take plaintiff's case to arbitration. In the case of pork butts, for example, plaintiff himself observes that neither Dixon nor Iacono had ever heard any mention of plaintiff's having stolen pork butts *until they appeared for their depositions in this case.* Id. ¶¶ 9-10. Plaintiff's union representatives can hardly be faulted for failing to seize on inconsistencies of which they were unaware.

side, plaintiff's testimony that he did not commit the theft of which he was accused, as well as three receipts in the three-dollar range; on the other side, the testimony of Mallano that he had sold no Brunckhorst products to plaintiff on September 15, 2004, the testimony of Sarlo that he had observed plaintiff leaving the workplace with Brunckhorst products on that day, and plaintiff's inability to produce a receipt of his own. Concluding that plaintiff lacked sufficient evidence to prevail at arbitration, Iacono declined to pursue his case further. Iacono Aff. ¶ 20. The Court offers no opinion about whether plaintiff did or did not commit theft. However, having reviewed the evidence that was available to Iacono when he decided not to take plaintiff's case to arbitration, the Court cannot conclude that Iacono's decision was outside the wide range of reasonableness granted him under the duty of fair representation. Thus defendants' motions for summary judgment must be granted.

## CONCLUSION

For the reasons explained above, defendants' motions for summary judgment are granted, and the complaint is dismissed.

SO ORDERED.

Dated: Brooklyn, New York
September 25, 2007

s/ Judge Raymond J. Dearie

---
RAYMOND J. DEARIE
United States District Judge